UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Jeffrey Demosthene,<br><br>               Plaintiff,<br><br>— against —<br><br>The City of New York, et al.,<br><br>               Defendants. | 18-cv-1358 (ARR) (PK)<br><br><br><br>Opinion & Order |

ROSS, United States District Judge:

On December 7, 2016, Jeffrey Demosthene ("plaintiff"), was acquitted at trial of criminal charges brought against him in connection with the 2013 murder of Najee Simmons. In this civil rights action, he alleges that his arrest and subsequent indictment were the product of a coordinated campaign of perjury and fabrications orchestrated by several New York City Police Department (NYPD) officers. Defendants moved to dismiss plaintiff's amended complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). For the following reasons, defendants' motion is granted, though I authorize plaintiff to seek leave to amend the allegations that give rise to his malicious prosecution claim within fourteen days of the date of this order; accordingly, I defer ruling on whether to exercise supplemental jurisdiction over plaintiff's remaining state-law claims until that time.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts are drawn from the allegations in plaintiff's amended complaint, Am. Compl., ECF No. 19. For the purpose of this motion, they are accepted as true, and I draw all reasonable inferences in plaintiff's favor. *See, e.g.*, *Taylor v. Vermont Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002).

On February 4, 2014, Jeffrey Demosthene was arrested and charged with two counts of criminal possession of a weapon in the second degree and one count of murder in the second degree. Am. Compl. ¶ 16. The arresting officers located plaintiff at New York State Supreme Court in Bronx County, where he had entered an appearance earlier that day on an unrelated criminal charge. *Id.* ¶ 18. The new charges against plaintiff arose out of the August 21, 2013 murder of a young man, Mr. Najee Simmons, in Queens, New York. *Id.* Three NYPD officers were present for plaintiff's arrest: Detective Kevin Goodspeed, who was acting as the lead detective in the murder investigation, Detective Anthony Puleo, Goodspeed's partner, and Detective Dennis Klein, Goodspeed's and Puleo's supervisor (collectively, "defendant officers"). *Id.* ¶¶ 10–12, 16, 19.

Plaintiff maintains that he was innocent of all charges and that his arrest and subsequent indictment were wholly unsupported by the facts. Specifically, he asserts that he "did not commit any murder, was not in possession of any weapon, and did not commit any offense against the laws of New York City and/or State." *Id.* ¶ 17. Prior to his arrest, no individual witness had "positively identified" plaintiff as the perpetrator of Mr. Simmons's murder, and the defendant officers had no evidence connecting plaintiff to the crime. *Id.* ¶¶ 20–21. Despite the lack of evidence against plaintiff, defendant officers met with prosecutors from the Queens County District Attorney's Office and falsely identified him as a suspect in the murder investigation. *Id.* ¶¶ 22, 38. During the meeting with the prosecutors, defendant officers "falsely stated . . . , among other things, that the plaintiff was allegedly in possession of a weapon which he allegedly used to shoot and kill Mr. Simmons." *Id.* ¶ 39. This meeting caused the prosecutors to bring charges against plaintiff, which led to his arrest. *Id.* ¶ 40. Later, defendant officers gave perjured testimony before the grand jury— presumably repeating the same statements previously made during the aforementioned meeting with the prosecutors. *Id.* ¶ 41. Based at least in part on this testimony, the grand jury returned a

true bill of indictment. *Id.* At all times during plaintiff's arrest, indictment, and incarceration, "[e]ach and every officer" involved in the investigation "knew and was fully aware that the plaintiff did not commit any crime or offense." *Id.* ¶ 49.

According to plaintiff, this was not the first time that he was arrested by NYPD officers without any evidence linking him to a crime. He alleges that his 2012 arrest for robbery in the second degree was also premised on falsehoods and police misconduct. *Id.* ¶¶ 23–27. On April 9, 2012, plaintiff was arrested by the same officers who are named as defendants in the instant action. *Id.* ¶¶ 23–25. He was charged as the perpetrator of a robbery that had occurred approximately two months prior, in February 2012, *id.*—notwithstanding the fact that he had not been identified by a witness or implicated as a suspect "in any way in any robbery," *id.* ¶ 24. On February 6, 2014, two days after plaintiff's arrest for murder, plaintiff filed a civil rights complaint against the City of New York ("the City") and several officers in connection with his 2012 arrest for robbery. That action was also filed in this district, and it is currently pending before Magistrate Judge Vera M. Scanlon and District Judge Sterling Johnson, Jr. *See* Docket Sheet, *Demosthene v. City of New York et al.*, No. 14-cv-00816-SJ-VMS (E.D.N.Y.) ("*Demosthene I*").[1]

---

[1] Though plaintiff alleges that defendant officers arrested plaintiff in 2012 "in a similar manner" to his arrest in 2014, Am. Compl. ¶ 23, defendants note that none of the individual officers named as defendants in this action are also named as individual defendants in his earlier lawsuit. *See* Defs.' Br. 1–2, ECF No. 21-1. Plaintiff previously sought leave to add Detectives Puleo and Klein—though not Detective Goodspeed—as defendants in *Demosthene I*. *See* Pl.'s Br. 3–4, ECF No. 26; Mot. to Amend, *Demosthene I*, 14-cv-00816-SJ-VMS (E.D.N.Y.), ECF No. 11. However, his motion was denied, and his interlocutory appeal of that order was subsequently dismissed by the Second Circuit due to a lack of jurisdiction. *See* Pl.'s Br. 3–4; Mandate of USCA as to Notice of Appeal, *Demosthene I*, 14-cv-00816-SJ-VMS (E.D.N.Y.), ECF No. 59. Still, because I accept the facts in plaintiff's complaint as true, I assume that the defendant officers named in the instant action were also involved in plaintiff's previous arrest in 2012. I address defendants' contention that the instant action is plaintiff's attempt to "relitigate issues [already] decided in [his] companion case before Judge Johnson," Defs.' Reply 1, ECF No. 24, in the discussion section of this opinion, *infra* pt. II.

After he was arrested on February 4, 2014, plaintiff was searched on two separate occasions by defendant officers. Though no contraband or evidence was discovered on his person, Am. Compl. ¶¶ 29–30, 35–36, defendant officers seized plaintiff's property, including two iPhones, without providing him with a voucher or any information about how he might recover his property after his trial had concluded, *id.* ¶¶ 45–47.[2] He was transported to the 105th police precinct, where he was detained "for a lengthy period of time" before being taken to Central Booking. *Id.* ¶¶ 34, 37. Plaintiff was remanded without bail, and subsequently incarcerated for several years after his arrest and indictment. *Id.* ¶¶ 42–43.

Ultimately, following a trial that concluded on December 7, 2016, plaintiff was found not guilty of all charges and released from prison. *Id.* ¶ 44. Since his release, he has been unable to recover the property that was seized at the time of his arrest. *Id.* ¶ 47.

Plaintiff initiated this lawsuit on March 5, 2018 against the three defendant officers, Sergeant Paul Dubrosky, the City, and several unnamed individuals employed by the NYPD and the Queens County District Attorney's Office. *See* Compl. ¶¶ 8–14, ECF No. 1. In his original complaint, he asserted seventeen causes of action against the defendants. *Id.* ¶¶ 51–131. After the City filed a pre-motion letter regarding its intention to file a motion to dismiss all claims, I encouraged plaintiff to eliminate all time-barred causes of action and assert his remaining causes of action with greater specificity. *See* Minute Entry, Aug. 23, 2018, ECF No. 18. I gave plaintiff nearly a month to file an amended complaint so that he would have ample time to locate transcripts from his criminal trial and any other documents that would provide the factual background

---

[2] Plaintiff's complaint includes several other factual allegations—including his assertion that the officers ignored his request to loosen the handcuffs around his wrists, *see* Am Compl. ¶¶ 31–33—which I do not describe here in detail because plaintiff does not assert a corresponding claim related to these allegations.

necessary to support his claims. *Id.* Plaintiff's amended complaint, filed on September 13, 2018, alleges four causes of action: (1) a federal claim for malicious prosecution under 42 U.S.C. § 1983; (2) a federal claim for municipal liability under 42 U.S.C. § 1983; (3) a state-law claim for false arrest; and (4) a state-law claim for malicious prosecution. *See* Am. Compl. ¶¶ 52–71. Plaintiff's amended complaint also removed Sergeant Dubrosky as a defendant to the action, though the other defendants remain the same. Defendants filed this motion on September 28, 2018, seeking dismissal of all of plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6).

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *County of Erie v. Colgan Air, Inc.*, 711 F.3d 147, 149 (2d Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). When reviewing a defendant's motion to dismiss, the court "must accept as true all of the factual allegations contained in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007) (quoting *Swierkiewicz v. Sorema N. A.*, 524 U.S. 506, 508 n.1 (2002)). As long as the plaintiff alleges sufficient factual content to allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged," the motion will be denied. *Ashcroft*, 556 U.S. at 678. However, the court is not required to accept as true conclusory allegations or "formulaic recitation[s] of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Likewise, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* A plaintiff must assert "specific facts or circumstances" in support of his claims; "[a] complaint which [is] . . . unsupported by factual assertions fails even the liberal pleading standard of Rule 12(b)(6)." *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996) (quoting *Palda v. Gen. Dynamics Corp.*, 47 F.3d 872, 875 (7th Cir. 1995)).

# DISCUSSION

## I.   Plaintiff's Malicious Prosecution Claims are Dismissed Without Prejudice.

Plaintiff alleges that defendant officers subjected him to malicious prosecution when he was charged and subsequently indicted in the absence of probable cause. Though I find that plaintiff's current factual allegations are insufficient to rebut the presumption of probable cause that attaches to his prosecution as a result of his indictment by a grand jury, I am unable to conclude at this stage of the litigation that there is *no* set of factual circumstances that could support his claims for malicious prosecution. As a result, I dismiss plaintiff's malicious prosecution claims without prejudice, and authorize him to seek leave to amend his complaint to reassert his claims for malicious prosecution.

Plaintiff's malicious prosecution claims arise under 42 U.S.C. § 1983 and New York state law, though the elements of each claim are nearly identical. *See, e.g.*, *Bailey v. City of New York*, 79 F. Supp. 3d 424, 448 (E.D.N.Y. 2015) ("The elements of malicious prosecution under section 1983 are 'substantially the same' as the elements under New York law . . . ."). To establish a claim for malicious prosecution under New York law, a plaintiff must demonstrate that: (1) the defendant "initiated a prosecution against [him]," (2) "the defendant lacked probable cause to believe the proceeding could succeed," (3) "the defendant acted with malice," and (4) "the prosecution was terminated" in favor of the plaintiff. *Smalls v. City of New York*, 181 F. Supp. 3d 178, 186 (E.D.N.Y. 2016) (quoting *Posr v. Court Officer Shield #207*, 180 F.3d 409, 417 (2d Cir. 1999)) (alteration in original). Where a plaintiff establishes that he was prosecuted without probable cause, he is entitled to a permissible inference that the defendants acted with malice in initiating the prosecution. *Manganiello v. City of New York*, 612 F.3d 149, 163 (2d Cir. 2010). To establish his claim under section 1983, plaintiff must additionally demonstrate that he was deprived of his

liberty after his arraignment. *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 116 (2d Cir. 1995).

Defendants do not appear to contest plaintiff's assertion that his pleading establishes three of the necessary elements of his malicious prosecution claim. Defs.' Br. 3–6; Pl.'s Br. 11–12; Defs.' Reply 8–12. By filing an accusatory instrument against plaintiff that led to his arraignment, *see* Am. Compl. ¶¶ 16, 38–40, the officers initiated the prosecution, *Smalls*, 181 F. Supp. 3d at 186, and plaintiff's acquittal at trial was a favorable termination of the proceeding, *Janetka v. Dabe*, 892 F.2d 187, 189–90 (2d Cir. 1989). Furthermore, plaintiff's physical detention following his arraignment satisfies the additional requirement of a "seizure" under section 1983. *See Hutchins v. Solomon*, No. 16-CV-10029 (KMK), 2018 WL 4757970, at *13 (S.D.N.Y. Sept. 29, 2018) ("Being free from unreasonable physical detention is a liberty interest under the Fourth Amendment.").

Instead, the crux of the parties' disagreement involves the requisite showing plaintiff must make to demonstrate that his prosecution was initiated and pursued despite an absence of probable cause—particularly where, as here, plaintiff was indicted by a grand jury. *See* Defs.' Br. 3–7; Pl.'s Br. 13–17. "[U]nder New York law, indictment by a grand jury creates a presumption of probable cause that may *only* be rebutted by evidence that the indictment was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'" *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003) (quoting *Colon v. City of New York*, 455 N.E.2d 1248, 1251 (N.Y. 1983)). Plaintiff alleges that defendant officers fabricated evidence against him and repeated falsehoods before the grand jury; he asserts that these allegations "easily satisf[y]" his obligation—at this stage of the litigation—to rebut the presumption of probable cause that follows from the indictment. Pl.'s Br. 13–14. In response, defendants assert that plaintiff "must do more than simply allege that a witness (or witnesses) lied before the grand jury"—he must also establish

"some evidentiary corroboration" that his indictment was premised on a lie. Defs.' Br. 6.

After reviewing the relevant authorities, I find both parties' characterization of the relevant standard to be flawed. Though plaintiff is correct that a grand jury indictment does not irreversibly "shield a police officer who deliberately supplied misleading information" from liability, Pl.'s Br. 13 (citing *Blake v. Race*, 487 F. Supp. 2d 187, 211 (E.D.N.Y. 2007) (internal citation omitted)), it is beyond dispute that a plaintiff's "mere conjecture and surmise that an indictment was procured as a result of conduct undertaken by defendants in bad faith" will not meet the pleading standard for overcoming the presumption of probable cause, *Gil v. County of Suffolk*, 590 F. Supp. 2d 360, 369 (E.D.N.Y. 2008). Because the presumption is "founded upon the premise that the Grand Jury acts judicially," *Colon*, 455 N.E.2d at 1250, plaintiff must do more than simply speculate about a defendant's misconduct. As with all claims, on a motion to dismiss, plaintiff's "conclusory allegations are insufficient to counter the presumption of probable cause" established by a grand jury indictment. *Lewis v. City of New York*, 591 F. App'x 21, 22 (2d Cir. 2015) (summary order). Indeed, the dismissal of malicious prosecution claims that fail to plead "sufficient facts to rebut the presumption of probable cause" is both a common practice among district courts and "routinely affirmed" by the Second Circuit. *Hadid v. City of New York*, 730 F. App'x 68, 71 n.1 (2d Cir. 2018) (summary order).

At the same time, defendants' characterization of plaintiff's burden at this stage of the proceeding is overly stringent and inappropriate for a 12(b)(6) motion. Defendants argue that plaintiff must point to an evidentiary "plus factor"—some corroboration in the record, beyond plaintiff's mere assertions of defendants' misconduct—in order to defeat their motion to dismiss. Defs.' Br. 6. But, the fact that plaintiff was indicted on criminal charges does not require him to meet an *increased* pleading standard; instead, as is true with most claims, plaintiff need do no more

than present "a short and plain statement of [his] claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). Defendants cite to *Watson v. Grady* to support their argument that plaintiff must provide some evidentiary proof that defendants lied in order to rebut the presumption of probable cause. Defs.' Br. 6. But, as plaintiff points out, *Watson* involved a motion for summary judgment, not a motion to dismiss. No. 09-cv-3055 (NSR), 2015 WL 2168189, at *16 (S.D.N.Y. May 7, 2015) (holding that the plaintiff failed to demonstrate that a jury could find that he was indicted in the absence of probable cause where there was no evidence in the record—beyond his conclusory testimony—to find that the defendants perjured themselves before the grand jury). Likewise, *Boyd v. City of New York*, the Second Circuit case relied upon in *Watson* as the basis for the "competing testimony plus" standard, also involved a motion for summary judgment. *Boyd*, 336 F.3d 72, 77 (2d Cir. 2003) (reversing the district court's grant of summary judgment to defendants on plaintiff's malicious prosecution claim where plaintiff pointed to evidence in the record that discredited defendants' testimony).

Here, in contrast, plaintiff is not required to prove that the defendants lied before the grand jury or in their discussions with the Queens County prosecutors; instead, he need only provide sufficiently specific factual allegations regarding the nature and content of their lies in order to survive defendants' 12(b)(6) motion.[3] *See, e.g.*, *Lewis v. City of New York*, No. 12-CV-2836

---

[3] Plaintiff cites *Wynder v. McMahon* and *Littlejohn v. City of New York* to support his argument that he is not obligated to plead "evidence" in order to defeat defendants' motion to dismiss. *See* Pl.'s Br. 14. While defendants are correct that both of these cases arose in the context of a Title VII discrimination claim, and therefore they discuss substantive elements of a prima facie claim under that statute that are not applicable here, *see* Defs.' Reply 9, plaintiff's contention that Rule 8 does not require plaintiff to plead "evidence . . . in detail," *Wynder*, 360 F.3d 73, 77 (2d Cir. 2004), is accurate *regardless* of plaintiff's underlying cause of action. *See, e.g.*, *United States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 457 (E.D.N.Y. 2007) ("A Rule 12(b)(6) motion subjects the complaint only to a superficial review, testing whether the plaintiff has stated a plausible claim of entitlement to relief without examining the evidence supporting those allegations.").

(RRM)(RML), 2013 WL 6816615, at \*9 (E.D.N.Y. Dec. 24, 2013) (dismissing plaintiff's malicious prosecution claim where plaintiff failed to specify the source of the alleged fabricated evidence or its content), *aff'd*, 591 F. App'x 21 (2d Cir. 2015) (summary order); *Ambrose v. City of New York*, 623 F. Supp. 2d 454, 476 (S.D.N.Y. 2009) (holding that plaintiff's "averments," unsupported by evidence, were "sufficient, at [the motion to dismiss] stage, to rebut the presumption that his prosecution was supported by probable cause"). Defendants err by equating factual allegations—a standard of pleading that all plaintiffs must meet in order to withstand a motion to dismiss—with the heightened requirement of evidentiary corroboration.

Though defendants mischaracterize plaintiff's pleading obligation, they are correct that plaintiff's current allegations are insufficient. Plaintiff's allegations of the defendants' impropriety are nearly all conclusory: he asserts that, at the time of his arrest, defendant officers had no evidence linking him to the crime, Am. Compl. ¶ 21, the officers nonetheless "identified [him] as a suspect and framed [him] as the perpetrator" of the murder, *id.* ¶ 22, they failed to uncover contraband or evidence from their searches of plaintiff, *id.* ¶¶ 30, 36, and they "offer[ed] false testimony to the Queens County Grand Jury," which led to plaintiff's indictment, *id.* ¶ 41.[4]

---

[4] If plaintiff's allegations relied exclusively on his assertion that the defendants perjured themselves before the grand jury, the defendants would be entitled to absolute immunity. *See Rehberg v. Paulk*, 566 U.S. 356, 369 (U.S. 2012) ("[A] grand jury witness has absolute immunity from any § 1983 claim based on the witness' testimony."); *see also Peterson v. Regina*, 935 F. Supp. 2d 628, 643 (S.D.N.Y. 2013) (holding that a malicious prosecution claim based exclusively on the allegation that the defendants lied before the grand jury would fail due to the absolute immunity that attaches to grand jury testimony). Here, plaintiff alleges that the defendant officers first made false statements to the prosecutors, and then subsequently repeated those same statements before the grand jury. Am. Compl. ¶¶ 38–41. As long as the defendants' alleged misconduct is independent of their grand jury testimony, the malicious prosecution claim is not barred due to absolute immunity. *See Coggins v. Buonora*, 776 F.3d 108, 113 (2d Cir. 2015) (holding that *Rehberg* did not require a malicious prosecution claim to be barred where plaintiff alleged that the defendant officer's grand jury testimony "paralleled information he gave in other contexts"); *see also Li v. City of New York*, 246 F. Supp. 3d 578, 613 (E.D.N.Y. 2017) (holding that plaintiff had rebutted the presumption of probable cause and defeated defendants' absolute

Together, these allegations amount to little more than "[t]he simple assertion that [plaintiff] was acquitted and therefore the officers must have lied." *Scully v. City of Watertown*, No. 7:03 CV 846, 2005 WL 1244838, at *11 (N.D.N.Y. May 25, 2005); *see also Rothstein v. Carriere*, 373 F.3d 275, 284 (2d Cir. 2004) (holding that plaintiff's "rank speculation" that defendant must have lied before the grand jury was insufficient to overcome the presumption of probable cause); *Lewis*, 2013 WL 6816615, at *9 (dismissing plaintiff's malicious prosecution claim because "[h]is allegations are tantamount to a mere surmise, given his professed innocence, that one, some, or all of the Defendant Officers must have fabricated evidence to provide probable cause for his arrest and indictment").

Plaintiff makes just one non-conclusory allegation in his amended complaint: that the defendants, during a meeting with prosecutors, "falsely stated . . . , among other things, that . . . plaintiff was allegedly in possession of a weapon which he allegedly used to shoot and kill Mr. Simmons." Am. Compl. ¶ 39. But even this allegation is too vague to rebut the presumption of probable cause established by plaintiff's indictment; on its own, this allegation fails to provide sufficiently specific notice of the fabricated evidence's source or form.[5] *See Hutchins*, 2018 WL

---

immunity by alleging that the defendant's misconduct extended to actions that were "separate and apart" from her grand jury testimony). However, as the Second Circuit noted in *Coggins*, if the defendant officers' statements to the prosecutors "constituted 'preparatory activity' conducted in advance of [their] grand jury testimony," the officers "would be entitled to absolute immunity." *Coggins*, 776 F.3d at 113 n.7. A statement is "preparatory" if it is designed to "relate[] the substance of . . . intended testimony" in advance of the grand jury proceeding. *Rehberg*, 566 U.S. at 370. Thus, if plaintiff repleads his malicious prosecution claim, his allegations should demonstrate that any false statements made by the defendant officers to the prosecutors were distinct fabrications, and not simply "preparatory communications . . . regarding the contents of any future testimony." *McDonough v. Smith*, No. 15-cv-01505, 2016 WL 5717263, at *14 (N.D.N.Y. Sept. 30, 2016).

[5] Moreover, plaintiff does not even state that the officers definitively accused him of having the weapon in his possession or using it to kill Mr. Simmons. Instead, he asserts that the officers told prosecutors that he "allegedly" was in possession of the weapon and that he "allegedly" used it in

4757970, at *14 ("Plaintiff has not identified any *particular lie* allegedly told by Solomon that led to his conviction." (emphasis added)); *B. v. City of New York*, No. 14-cv-1021 (KAM)(PK), 2016 WL 4530455, at *15 (E.D.N.Y. Aug. 29, 2016) ("None of the allegations even suggest the nature of the purported misconduct."). Though plaintiff provides notice—however slight—of the content of the alleged lie, he fails to explain how the defendant officers communicated to the prosecutors that they discovered this information. The deficiencies in plaintiff's complaint are similar to those identified by the district court in *Lewis v. City of New York*—a case that was subsequently affirmed by the Second Circuit. In *Lewis*, the plaintiff alleged that the defendant officers fabricated evidence that led to his indictment, including the false allegation that he either "stabbed someone with [a] knife, or possessed the knife with intent to use it for a criminal activity." 2013 WL 6816615, at *2. These allegations, the court found, were too flimsy to rebut the presumption of probable cause; plaintiff failed to specify "whether the fabricated evidence came in the form of an eyewitness account, the Defendant Officers' own observations, a self-incriminating statement, or something else." *Id.* The Second Circuit agreed; by failing to provide a more specific account of *how* the defendant officers established the incriminating details that would be used to secure plaintiff's indictment, plaintiff's complaint "essentially alleg[ed] only that the defendant officers *must have* fabricated evidence in light of Lewis's version of the events and his ultimate acquittal." *Lewis*, 591 F. App'x at 22.[6]

---

connection with the crime. Am. Compl. ¶ 39 (emphasis added). Should plaintiff replead his malicious prosecution claims, his allegations must clearly indicate that the officers lied regarding the plaintiff's culpability. He should remove any language from his allegations that distracts from or distorts his claim that the officers identified him as a suspect in the murder investigation.

[6] Plaintiff seeks to distinguish *Lewis* by arguing that, in that case, the plaintiff's allegations were pure speculation, rather than, as here, a decisive statement that the officers *did* fabricate the evidence that led to plaintiff's indictment. *See* Pl.'s Br. 15. But plaintiff misinterprets the holding in *Lewis*; the Second Circuit found that the plaintiff's allegations of fabrication were so vague and

Likewise, plaintiff's allegations leave open numerous questions regarding the manner in which the fabricated evidence was communicated and used as part of the State's case against him. Plaintiff's vague assertion that the defendant officers falsely reported that he was in possession of a weapon that was used to kill Mr. Simmons is materially distinct from the allegations that have been deemed sufficient to rebut the presumption of probable cause. In *Smalls*, for example, the plaintiff alleged that one of the defendant officers falsely stated "that he had seen Smalls hand a gun to his brother and that Smalls had made an inculpatory statement." 181 F. Supp. 3d at 187. The court held that these details "hit[] the mark" in overcoming the presumption of probable cause at the motion to dismiss stage; they provided the defendant with specific information about plaintiff's version of his indictment and the *nature* and *type* of that particular defendant's alleged lies. *Id.* Similarly, in *Ambrose*, the plaintiff provided specific details of the defendants' alleged misconduct, including the assertion that the officers "coerced a lineup witness into implicating Plaintiff." 623 F. Supp. at 477. Though these allegations, without more, may ultimately prove inadequate to defeat a motion for summary judgment, they provided a precise factual account of the plaintiff's version of the events leading up to his indictment. In contrast, plaintiff's allegations here amount to vague speculations and unsupported conclusions regarding the role of the defendants' statements in his indictment. *See, e.g.*, *Crespo v. Rivera*, No. 16 Civ. 708 (PGG), 2018 WL 4500868, at *14 (S.D.N.Y. Sept. 19, 2018).

Moreover, plaintiff's allegations fail to identify the role of each of the defendant officers in formulating and conveying the fabricated evidence to the relevant authorities. Apart from providing a general indication of the position that each officer held in plaintiff's investigation, Am.

---

non-specific that they were little more than pure speculation. 591 F. App'x at 22. In doing so, the court reaffirmed the obligation for plaintiffs to provide facts in support of their claims, rather than relying purely on conclusions of misconduct. *Id.*

Compl. ¶ 19, plaintiff refers to the "defendant officers" as a cohesive unit, stating only that the "defendant officers" collectively engaged in the relevant misconduct. This, too, is insufficient for plaintiff to meet his pleading obligations under *Twombly*, as plaintiff "nowhere allege[s] the specific, personal involvement of any of the defendants in the alleged malicious prosecution[]," and he fails to describe the "*particular* actions [each defendant] undertook to maliciously prosecute [him]." *B.*, 2016 WL 4530455, at *13 (emphasis added).

Despite the insufficiency of his current allegations, I find that it is appropriate to allow plaintiff—if he chooses—to seek leave to amend his complaint to address these deficiencies. Plaintiff's allegations of defendants' misconduct, though vague and conclusory, are serious; if true, these allegations would amount to an egregious offense. Moreover, plaintiff has already provided a loose outline of the allegations he may ultimately seek to plead: he alleges that the defendant officers first communicated their lies during a meeting with the prosecutors, and that they falsely informed prosecutors that he was in possession of a weapon used to kill Mr. Simmons. If plaintiff fills in this outline with facts, the complaint *could* state a claim for malicious prosecution. Though plaintiff surely would prefer to proceed to discovery, it is difficult to imagine that he does not have the facts at his disposal to adequately state his claim, as he was present for the trial on his indictment and was a firsthand witness to the testimony that he alleges to be fabricated. *See Lewis*, 591 F. App'x at 22. If plaintiff wishes to pursue his malicious prosecution claim any further, he must find the relevant facts in the record before him. Given the nature of his allegations, I will grant him one more opportunity to do so.

## II.     Plaintiff's *Monell* Claim is Dismissed With Prejudice.

In addition to his malicious prosecution claim, plaintiff seeks to hold the City of New York liable for his constitutional deprivations under *Monell*. Specifically, he alleges that the City "had

actual and/or de facto policies, practices, customs and/or usages of failing to properly train, supervise or discipline its police officers." Am. Compl. ¶ 61.[7] He asserts that the City provided deficient training, supervision, and discipline in a variety of policing contexts: investigations, the seizure and subsequent return of property, the need to provide truthful testimony, and the obligation to refrain from prosecuting or arresting innocent people. *Id.* Even plaintiff admits that these allegations "d[o] not adequately flesh out his [*M*]*onell* claim." Pl.'s Br. 26. Instead, plaintiff's "allegations against the City can best be described as 'heavy on descriptive language . . . [but] light on facts.'" *Rodriguez v. Patricio*, No. 11 Civ. 0515 (ALC)(GWG), 2013 WL 12304026, at *4 (S.D.N.Y. Mar. 15, 2013) (quoting *Cuevas v. City of New York*, No. 07 Civ. 4169 (LAP), 2009 WL 4773033, at *4 (S.D.N.Y. Dec. 7, 2009)).

Recognizing that the current version of his complaint fails to state a claim under *Monell*, plaintiff seeks leave to amend his complaint to assert this claim with "greater specificity," and he has provided the court with a proposed Second Amended Complaint that he argues would satisfy his pleading obligations. Pl.'s Br. 7; Uzoh Decl., Ex. 2, ECF No. 25-2 ("Proposed Second Am. Compl."). In response, defendants argue that plaintiff's amendment is procedurally improper and that, even if accepted, his newly alleged facts are futile, as plaintiff "still fail[s] to state a claim for municipal liability." Defs.' Reply 5.

The "liberal standard set forth in [Fed. R. Civ. P.] 15" requires a court to "freely give leave [to amend] when justice so requires." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015). Though I encouraged plaintiff to submit his "last and best"

---

[7] In their motion to dismiss, defendants argue that plaintiff's *Monell* claim would also fail to state a claim even if it was alternatively interpreted as a state-law claim for negligent hiring, training, retention, and supervision. *See* Defs.' Br. 12–14. Because plaintiff does not address this argument in his opposition and instead characterizes his claim as arising under *Monell*, *see* Pl.'s Br. 19, I do not reach it.

pleading following the pre-motion conference, the Second Circuit has cautioned courts that it may be appropriate to give a plaintiff leave to amend even after the defendant has filed a motion to dismiss. *See id.* Still, a court is not obligated to grant a party leave to amend a complaint when doing so would be futile. *Id.* I do not preclude plaintiff from seeking to amend simply because he did not previously include these allegations in his first amended complaint, but I nonetheless deny him leave as I find that his proposed amendments still fail to state a claim under *Monell*.

In *Monell v. Department of Social Services of City of New York*, the Supreme Court held that a municipality will not be liable under § 1983 on the basis of *respondeat superior*; instead, to state a claim for municipal liability, a plaintiff must demonstrate that the unconstitutional action that caused his injury was taken "pursuant to [an] official municipal policy of some nature." 436 U.S. 658, 691 (1978). In other words, the plaintiff must establish that the municipality "was the moving force behind the alleged injury." *Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 532 (S.D.N.Y. 2012) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008). A plaintiff can establish the existence of an official policy or custom that would give rise to liability under *Monell* in several ways; under one theory, "a municipality may be liable for the failure to train or supervise its employees where such failure amounts to 'deliberate indifference' to the risk that its employees will unconstitutionally apply its policies without more training or supervision." *Id.* (citing *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 129 (2d Cir. 2004)). Likewise, a plaintiff can argue that a municipality had a policy or custom of failing to discipline its employees, but a claim based on a municipality's failure to discipline will be viable under *Monell* only if it amounts to "deliberate indifference" to the constitutional rights of constituents. *Id.* at 534; *see also Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) ("[M]unicipal inaction such as the persistent failure to discipline subordinates who violate civil rights could give rise to an inference of an

unlawful municipal policy of ratification of unconstitutional conduct within the meaning of *Monell*.").

To demonstrate that a municipality's failure to train, supervise, or discipline an employee amounts to "deliberate indifference," a plaintiff must establish three things: (1) the "policymaker knows 'to a moral certainty' that her employees will confront a given situation," (2) "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult" or "there is a history of employees mishandling the situation," and (3) "the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *Jenkins v. City of New York*, 478 F.3d 76, 94 (2d Cir. 2007) (quoting *Walker v. City of New York*, 974 F.2d 293, 297–98 (2d Cir. 1992)). Additionally, where a plaintiff alleges that the City's failure to train its employees caused his injury, he must point to an identifiable deficiency in the City's training program, which is "closely related to the ultimate injury." *City of Canton v. Harris*, 489 U.S. 378, 391 (1989); *see also Johnson v. City of New York*, No. 06 CV 09426, 2011 WL 666161, at *4 (S.D.N.Y. Feb. 15, 2011) (noting that plaintiff's *Monell* allegations failed because they did not "identify procedural manuals or training guides, nor d[id] they highlight relevant particular aspects of police training or supervision" (citation omitted)).[8]

---

[8] Plaintiff argues that he does not need to identify a specific deficiency in the City's training programs at this stage of the litigation, citing to dictum from the Second Circuit's opinions in *Amnesty America* and *Jenkins*. *See* Pl.'s Br. 24–25. However, since the Supreme Court's decisions in *Twombly* and *Iqbal*, courts in this circuit have held that, though the standard at the motion to dismiss stage may be less stringent than the specificity required at the summary judgment stage, plaintiffs must identify with some degree of particularity a "specific deficiency in the municipality's training" in order to survive a motion to dismiss, *Tieman v. City of Newburgh*, No. 13-CV-4178 (KMK), 2015 WL 1379652, at *22 (S.D.N.Y. Mar. 26, 2015); *see also Simms v. City of New York*, 480 F. App'x 627, 631 n.4 (2d Cir. 2012) (summary order) ("While it may be true that § 1983 plaintiffs cannot be expected to know the details of a municipality's training programs prior to discovery, this does not relieve them of their obligation under *Iqbal* to plead a facially plausible claim." (citation omitted)).

A plaintiff can demonstrate that the City has a policy or custom that caused the constitutional injury if "a local government is faced with a pattern of misconduct and does nothing." *Triano*, 895 F. Supp. 2d at 534 (quoting *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007)). However, a government's acquiescence or inaction will support *Monell* liability "only where the need to act is so obvious, and the inadequacy of current practices so likely to result in a deprivation of federal rights, that the municipality or official can be found deliberately indifferent to the need." *Id.* (quoting *Reynolds*, 506 F.3d at 192). Though "a single instance of deliberate indifference to subordinates' actions can provide a basis for municipal liability," *Amnesty Am.*, 361 F.3d at 127, the plaintiff must *prove* that the incident occurred, that it resulted in the deprivation of a constitutional right, and that "it was caused by an existing, unconstitutional municipal policy." *City of Oklahoma v. Tuttle*, 471 U.S. 808, 823–24 (1985).

In his proposed amended complaint, plaintiff cites to over a dozen federal lawsuits that he argues involved allegations of "wrongful conduct" similar to that alleged in his own complaint. Proposed Second Am. Compl. ¶¶ 65–75. Plaintiff alleges that these lawsuits compel an "infer[ence]" that the City maintains various unconstitutional policies, including "wrongfully arresting, illegally stopping, frisking, searching, seizing, abusing, humiliating, degrading and/or maliciously prosecuting individuals who are members of racial/ethnic groups . . . on the pretext that they were involved in robbery, narcotics, drugs, guns and/or other crimes." *Id.* ¶¶ 63–64. Plaintiff provides little context about most of his cited cases, though they appear to involve a huge variety of factual contexts—from false arrests and the fabrication of evidence, *see id.* ¶ 65, to bystander liability and the establishment of probable cause, *see id.* ¶¶ 66–71, to "improper seizure and/or appropriation of properties," *id.* ¶ 75.

There are numerous reasons why these allegations fall short of establishing the existence

of a city-wide policy or custom. First, the mere fact that plaintiffs in other lawsuits have alleged unconstitutional treatment similar to the violations alleged by plaintiff does not mean that the City is liable for these alleged violations. *See, e.g.*, *Ameduri v. Village of Frankfort*, 10 F. Supp. 3d 320, 341 (N.D.N.Y. 2014) ("The Second Circuit and the district courts within the Second Circuit have held that a plaintiff's citation to a few lawsuits involving claims of [unconstitutional conduct] is not probative of the existence of an underlying policy by a municipality . . . ."); *Jean-Laurent v. Wilkerson*, 461 F. App'x 18, 22–23 (2d Cir. 2012) (holding that the "citation to various lawsuits involving . . . claims" of unconstitutional conduct "is not probative of the existence of an underlying policy" (summary order)). Here, the majority of cases cited by plaintiff concluded in voluntary settlement.[9] *See* Proposed Second Am. Compl. ¶ 75. But, the plaintiff's citation to cases that were resolved without an "adjudication of liability," *Walker v. City of New York*, No. 12-CV-5902, 2014 WL 1259618, at *3 (S.D.N.Y. Mar. 18, 2014), is insufficient as a matter of law to demonstrate the existence of a custom or policy. *See Tieman v. City of Newburgh*, No. 13-CV-4178 (KMK), 2015 WL 1379652, at *17 (S.D.N.Y. Mar. 26, 2015) (citing cases); *Collins v. City of New York*, 923 F. Supp. 2d 462, 479 (E.D.N.Y. 2013) (holding that the plaintiff's citation to other cases of alleged police misconduct was insufficient, in part because the cases involve factually distinct situations, different time periods, "or . . . something less (settlements without admissions of liability and unproven allegations) than evidence of misconduct").

Likewise, the fact that plaintiff relies in part on allegations of his *own* mistreatment by the same defendants does not save his untenable claim for *Monell* liability. *Cf. Walker*, 2014 WL 1259618, at *3 ("A lawyer's citation to actions she has brought and subsequently settled without

---

[9] Plaintiff also cites to a case recently filed by his lawyer which is currently in discovery. *See* Docket Sheet, *Gutierrez v. City of New York*, 18-cv-03621-FB-SJB (E.D.N.Y.). That case is equally unavailing, as plaintiff has yet to prove his allegations.

adjudication or admission of liability is clearly an insufficient basis for a *Monell* claim."). Plaintiff argues that the fact that he previously alleged similar conduct on the part of the City (and, he argues, the same defendant officers, *see supra* note 1) demonstrates that the City maintains an unconstitutional policy of arresting suspects without evidence. Proposed Second Am. Compl. ¶ 73. But, as the City points out, plaintiff's previous allegations have not resulted in an adjudication of liability against the City.[10] *See* Defs.' Reply 1–4. Though plaintiff may include these allegations in his complaint, they "are tantamount to unsubstantiated accusations, which are wholly insufficient" to support his claim of an unconstitutional policy or custom. *Patricio*, 2013 WL 12304026, at *4; *cf. Rodriguez v. City of New York*, No. 10 Civ. 1849(PKC), 2011 WL 4344057 (S.D.N.Y. Sept. 7, 2011) ("[T]he facts provided in connection with the single incident experienced by the plaintiff does not put the City on notice as to what its *policymakers* have done or failed to do that amount to deliberate indifference to unconstitutional conduct by its police force." (emphasis added)). Plaintiff's citation to his own prior allegations does not establish the existence of a city-wide policy; all it establishes is that he has claimed similar misconduct in the past. *Cf.* Defs.' Reply 4 (arguing that plaintiff's attempt to include the factual allegations contained in *Demosthene I* as a basis for municipal liability is an improper "backdoor attempt" to relitigate those claims).

Second, plaintiff's citation to complaints "premised on a different set of factual

---

[10] Most recently, Magistrate Judge Vera M. Scanlon filed a report and recommendation in which she recommended that Judge Johnson grant the defendants' motion for summary judgement on all claims. *See* R. & R., ECF No. 104. Plaintiff submitted objections to the R. & R., and Judge Johnson has not yet ruled on the motion. Plaintiff initially misstated the procedural history of this case, erroneously arguing that the district court had "terminated defendants' motion for summary judgment in that matter" and ruled in his favor. Pl.'s Br. 3. However, he subsequently filed a letter acknowledging his error and explaining that he had misread the docket sheet. *See* Letter, Nov. 5, 2018, ECF No. 27.

allegations," where the underlying incidents arose during factually divergent contexts, "does not support an inference that [his] injuries were caused by the City's failure to train its employees." *Simms*, 480 F. App'x at 630. For example, plaintiff relies heavily on the allegations in *Jones v. City of New York*—a case where the Second Circuit suggested, without deciding, that plaintiff may be able to demonstrate a municipal liability claim through further factual development. 603 F. App'x 13, 15 (2d Cir. 2015) (summary order). But, that case involved alleged misconduct that is distinct from the allegations in plaintiff's complaint; there, the plaintiff argued that the City had a policy of "charging all members of a group with criminal possession of a weapon when only one group member is alleged to have possessed a firearm." *Id.* Mr. Demosthene, however, does not allege that a member of his group had a firearm; he asserts instead that there was *nothing* to connect him to the crime, and that his arrest was based on fabrications—not on the officers' misunderstanding regarding the nature of probable cause. Likewise, plaintiff's citation to *Ligon v. City of New York* is inapposite, as he does not allege that he was the victim of an unlawful stop and frisk. *See* Pl.'s Br. 22. In sum, "[p]laintiff's references to unconnected, irrelevant litigation are patently inadequate to allege a policy or custom of the City." *Peterec v. City of New York*, No. 14-cv-309 (RJS), 2015 WL 1027367, at *7 (S.D.N.Y. Mar. 6, 2015); *cf. Osterhoudt v. City of New York*, No. 10 CV 3173(RJD)(RML), 2012 WL 4481927, at *2 (E.D.N.Y. Sept. 27, 2012) (denying motion to dismiss *Monell* claim where plaintiff's allegation of the City's failure to train officers in identifying the existence of probable cause "is the *same* training failure that led to his own unlawful arrest" (emphasis added)).

Finally, plaintiff cannot plausibly allege that the City has been "deliberately indifferent" to the unconstitutional impact of its alleged policies because he fails to demonstrate that the City's response to the allegations of misconduct was so "superficial as to suggest that its official attitude

was one of indifference to the truth of the claim." *Fiacco v. City of Rensselaer*, 783 F.2d 319, 328 (2d Cir. 1986). "[D]eliberate indifference may be inferred if [civil rights] complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." *Shepherd*, 2012 WL 4477241, at *9. Plaintiff cites to *Fiacco v. City of Rensselaer* to support his argument that allegations of misconduct alone—even without adjudication on the merits—may be sufficient to allege an unconstitutional policy. Pl.'s Br. 21. In that case, however, the plaintiff's allegations established that the City was both "on notice" of the unconstitutional conduct *and* that it failed to meaningfully investigate the claims. 783 F.2d at 328.[11] Here, plaintiff simply alleges prior misconduct; it is well-established, however, that "the mere fact that the misconduct occurred in the first place" does not support a municipal liability claim absent evidence of the City's reaction to those claims. *Amnesty Am.*, 361 F.3d at 130; *cf. Outlaw v. City of Hartford*, No. 3:07-cv-01769, 2015 WL 1538230, at *10 (D. Conn. Apr. 6, 2015) (granting defendants' motion for summary judgment where plaintiff's citation to dozens of lawsuits was unaccompanied by any evidence of the City's response to the complaints, and holding that, "[a]bsent such evidence, the numbers alone have minimal probative value").

As a result, plaintiff's claim for *Monell* liability is dismissed.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss plaintiff's claims is granted. His malicious prosecution claim is dismissed without prejudice, and his *Monell* claim is dismissed with prejudice. Because plaintiff may seek leave to amend his malicious prosecution claim, I will

---

[11] As already stated, *Fiacco* is also materially distinct from the instant case because plaintiff's cited complaints involved a huge variety of factual circumstances, rather than the *Fiacco* plaintiff's citation to numerous claims of excessive force and police brutality similar to her allegations of police wrongdoing. *Fiacco*, 783 F.2d at 328.

defer consideration of whether to exercise supplemental jurisdiction over plaintiff's state-law claims until I rule on the viability of plaintiff's federal claim for malicious prosecution. *See, e.g.*, *Haely v. Judd*, No. 8:12-CV-89-T-17TGW, 2012 WL 3204591, at *5 (D. Fla. Aug. 3, 2012).

If plaintiff wishes to seek leave to amend his complaint to reassert his malicious prosecution claim, he must file a proposed amended complaint within fourteen days of the date of this order.


SO ORDERED.


_____/s/_____

Allyne R. Ross
United States District Judge

Dated: January 10, 2019
        Brooklyn, New York