UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Jeffrey Demosthene,<br><br>　　　　　　Plaintiff,<br><br>— against —<br><br>The City of New York, et al.,<br><br>　　　　　　Defendants. | 18-cv-1358 (ARR) (PK)<br><br>Not for electronic or print publication<br><br>Opinion & Order |

ROSS, United States District Judge:

　　Plaintiff, Jeffrey Demosthene, brings this civil-rights action under 42 U.S.C. § 1983 and New York state law against the City of New York ("the City") and several members of the New York City Police Department ("NYPD"): Detective Kevin Goodspeed, Detective Anthony Puleo, Lieutenant Dennis Klein, Detective John Roberts, Sergeant Bryan Pierre, and Detective Gary Haber. Plaintiff alleges that the defendants coerced two individuals into falsely implicating him in the 2013 murder of Najee Simmons, leading to his indictment by a grand jury and his subsequent arrest and prosecution. In January 2019, I granted defendants' motion to dismiss the federal claims against them, but I gave plaintiff leave to replead his malicious prosecution claim with greater factual specificity. Defendants now move to dismiss plaintiff's second amended complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, I deny the defendants' motion except as to those claims brought against defendant Klein; all other claims and defendants remain in this action, and the parties must now proceed to discovery.

## BACKGROUND

　　The following facts are taken from the allegations in plaintiff's second amended complaint, *see* SAC, ECF No. 38. For the purpose of this motion, they are accepted as true, and I draw all

1

reasonable inferences in plaintiff's favor. *See, e.g.*, *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002).

On August 31, 2013, Najee Simmons was murdered in Queens, New York. *See* SAC ¶ 28. Several months later, on February 4, 2014, plaintiff was arrested and charged with two counts of criminal possession of a weapon in the second degree and one count of murder in the second degree. *Id.* ¶¶ 19, 98–101. Plaintiff asserts that he "did not commit any murder [and] was not in possession of any weapon." *Id.* ¶ 102. He alleges that his arrest and prosecution were the result of a coordinated campaign orchestrated by the defendant officers to coerce witnesses into identifying plaintiff as the person responsible for Simmons's murder.

According to plaintiff, the defendants' efforts to frame him began immediately after the shooting. On August 31, 2013, two of the defendants, Detective Roberts and Detective Haber, obtained and reviewed surveillance footage that had been recovered from a convenience store. *See id.* ¶ 42. The video showed several people "congregat[ing] in front of the store" around the time of the shooting, and the defendant officers recognized plaintiff as one of the people in the video. *Id.* ¶¶ 42–43. The detectives were familiar with plaintiff's appearance and identity because they had both been involved in a prior investigation that led to plaintiff's arrest on unrelated charges stemming from a gunpoint robbery in 2012. *Id.* ¶¶ 42–43; *see also id.* ¶¶ 117–18. At the time of plaintiff's arrest for robbery, Detective Haber told plaintiff that the arresting officers "would make sure that [plaintiff was] incarcerated for the rest of his life the next time they c[a]me into contact with him." *Id.* ¶ 178.[1]

---

[1] As I explain below, I deny defendants' motion to strike all of the allegations related to plaintiff's 2012 arrest and I include here those allegations that are pertinent to plaintiff's assertion that the defendant officers had a motive to falsify evidence against him based on their prior history.

Though there were other individuals who could be seen on the video—and despite the fact that "no witness had identified the plaintiff as a suspect and/or perpetrator of the shooting" at this time in the investigation—the "NYPD immediately named the plaintiff as the suspect and began a campaign to frame him as the perpetrator of the homicide." *Id.* ¶¶ 40–41, 45. After speaking with Detective Haber and Detective Roberts, Detective Puleo officially designated plaintiff as the primary suspect in the murder investigation and requested that United States Customs and Border Protection place him on a no-fly list. *Id.* ¶¶ 45, 47–48. The next day, the defendant officers began interviewing witnesses with the goal of obtaining a statement naming plaintiff as the shooter. *Id.* ¶¶ 52–53. The officers "spoon-f[ed] [these] witnesses false information . . . for repetition in official statements and began to coerce witnesses to falsely implicate the plaintiff." *Id.* ¶ 53. None of the three witnesses they interviewed, however, named plaintiff as the shooter; in fact, all three men explained that they did not see the shooter and could not identify the suspect.[2] During his interview with Sergeant Bryan Pierre on September 1, 2013, Marlon Oscar explained that he "looked over after the shooting and realized that Mr. Simmons had been shot." *Id.* ¶¶ 55–56. He told officers that he left the scene immediately after the shooting, and he "did not indicate in any fashion that he observed the shooter . . . [or] that he knew the identity of the shooter." *Id.* ¶ 58. Shana Graham was also interviewed by Sergeant Pierre the day after the shooting. *Id.* ¶¶ 59–60. Like Oscar, he neither named a suspect nor provided the defendant officers with information to suggest that he was aware of the shooter's identity. *Id.* Finally, Enrique Rocha, who was also interviewed on September 1, 2013, told officers that he "did not see the shooter," and informed the officers that he "immediately turned around after hearing the gunshot." *Id.* ¶¶ 62–64.

---

[2] Plaintiff does not explain where he obtained the dates and times of witness interviews and other details of the murder investigation. However, because his complaint refers to quotes that appear to have been taken from NYPD witness interviews and other notes and documents from the investigation, *see, e.g.*, SAC ¶ 69, the court assumes that the information came from NYPD sources.

The defendant officers were not satisfied with these responses, and they continued to "pressur[e] witnesses . . . to implicate the plaintiff." *Id.* ¶ 65. Nearly two months after his initial interview, Oscar provided defendants with another statement, though this time his statement named plaintiff as the shooter. *Id.* ¶ 65. Plaintiff alleges that Oscar's statement was the result of pressure and coercion from the officers, and did not represent the truth; as support, he alleges that Oscar wrote multiple handwritten statements under the close supervision of Detective Goodspeed, and that the material facts of his statement changed in response to the continued pressure and intervention of Detective Goodspeed. *Id.* ¶¶ 66–71. Likewise, though Christopher Noels—another alleged witness to the shooting—provided the defendant officers with a statement implicating plaintiff as the shooter, plaintiff alleges that this statement was obtained after the officers began "spoon-feeding witnesses false information . . . for repetition in official statements," and he alleges that Noels's statement was later misrepresented by Sergeant Pierre in his own investigation notes. *Id.* ¶¶ 53–54, 75–81.[3]

The defendant officers forwarded these "falsified records and coerced witness statements" to prosecutors, and "promoted Mr. Oscar as a grand jury witness" despite their knowledge that he had lied and changed his story several times during the course of the investigation. *Id.* ¶ 84. Oscar testified in front of the grand jury and, on January 9, 2014, the grand jury returned a true bill of indictment. *Id.* ¶ 98. The defendant officers did not interview or speak to plaintiff about the shooting at any time before his indictment. *Id.* ¶ 107. Following the indictment, the officers obtained a warrant for plaintiff's arrest, *id.* ¶ 100, and plaintiff was arrested about a month later,

---

[3] Plaintiff does not directly state that Noels's statement was falsified, though he refers to all witness statements obtained by the defendant officers as "coerced witness statements," *see* SAC ¶ 84, and states generally that all witnesses were pressured by the defendants to "falsely implicate the plaintiff," *id.* ¶ 53. Drawing all inferences in plaintiff's favor, I assume that plaintiff is alleging that Noels, like Oscar, was pressured into making his statement, which was later misrepresented by Sergeant Pierre in the notes he drafted during the investigation.

on February 4, 2014, *id.* ¶¶ 19, 101. At the time of plaintiff's arrest, the defendants seized two of plaintiff's iPhones and did not provide him with a voucher or any information about how he might recover his property after his trial had concluded. *Id.* ¶¶ 112–15. Plaintiff was remanded without bail, and subsequently incarcerated for several years. *Id.* ¶¶ 105–06. In December 2014, Oscar recanted his statements implicating plaintiff in Simmons's murder. *Id.* ¶ 108. Ultimately, following a trial that concluded on December 7, 2016, plaintiff was found not guilty of all charges and released from prison. *Id.* ¶ 111. Since his release, he has been unable to recover the property that was seized at the time of his arrest. *Id.* ¶ 115.

Plaintiff initiated this lawsuit on March 5, 2018, *see* Compl., ECF No. 1, and later amended his complaint on September 13, 2018, *see* Am. Compl., ECF No. 19. On January 10, 2019, I granted defendants' motion to dismiss plaintiff's federal claims against them, but I authorized plaintiff to seek leave to amend the allegations that gave rise to his malicious prosecution claim. *See Demosthene v. City of New York*, No. 18-cv-1358 (ARR) (PK), 2019 WL 181305 (E.D.N.Y. Jan. 10, 2019). I granted plaintiff's motion to file the current operative complaint—his second amended complaint—on February 8, 2019. *See* Feb. 8, 2019 Order 5, ECF No. 32. Plaintiff's second amended complaint asserts four causes of action: (1) a federal claim for malicious prosecution under 42 U.S.C. ¶ 1983; (2) a state-law claim for malicious prosecution; (3) a state-law claim for false arrest; and (4) a state-law claim for replevin and conversion. *See* SAC ¶¶ 187–217. Defendants filed this motion, seeking dismissal of plaintiff's second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), on February 22, 2019. *See* Defs.' Br., ECF No. 41-1. Plaintiff filed his opposition to defendants' motion on March 22, 2019, *see* Pl.'s Br., ECF No. 45, and defendants filed their reply on April 4, 2019, *see* Defs.' Reply, ECF No. 46.

**STANDARD OF REVIEW**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *County of Erie v. Colgan Air, Inc.*, 711 F.3d 147, 149 (2d Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). When reviewing a defendant's motion to dismiss, the court "must accept as true all of the factual allegations contained in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007) (quoting *Swierkiewicz v. Sorema N. A.*, 524 U.S. 506, 508 n.1 (2002)). As long as the plaintiff alleges sufficient factual content to allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged," the motion will be denied. *Ashcroft*, 556 U.S. at 678. However, the court is not required to accept as true conclusory allegations or "formulaic recitation[s] of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Likewise, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* A plaintiff must assert "specific facts or circumstances" in support of his claims; "[a] complaint which [is] . . . unsupported by factual assertions fails even the liberal pleading standard of Rule 12(b)(6)." *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996) (quoting *Palda v. Gen. Dynamics Corp.*, 47 F.3d 872, 875 (7th Cir. 1995)).

Defendants ask that I strike all of the allegations in plaintiff's complaint that pertain to his arrest on April 9, 2012. Defs.' Br. 10 (moving to strike paragraphs 117–185). "Motions to strike 'are not favored and will not be granted unless it is clear that the allegations in question can have no possible bearing on the subject matter of the litigation.'" *Ruffino v. Murphy*, No. 3:09-cv-1287 (VLB), 2009 WL 5064452, at *1 (D. Conn. Dec. 16, 2009) (quoting *Schramm v. Kirschell*, 84 F.R.D. 294, 299 (D. Conn. 1979)). A motion to strike is appropriate only if the allegations are "redundant, immaterial, impertinent or scandalous"—not simply where the complaint "may be characterized as 'overly narrative.'" *Bianco v. County of Nassau*, No. 16-CV-444 (JMA)(AYS),

2018 WL 1175157, at *6 (first quoting Fed. R. Civ. P. 12(f); then quoting *Lynch v. Southampton Animal Shelter Found. Inc.*, 278 F.R.D. 55, 65 (E.D.N.Y. 2011)). To prevail on such a motion, the movant "must demonstrate that '(1) no evidence in support of the allegations would be admissible; (2) that the allegations have no bearing on the issues in the case; and (3) that to permit the allegations to stand would result in prejudice to the movant.'" *Roe v. City of New York*, 151 F. Supp. 2d 495, 510 (S.D.N.Y. 2001) (quoting *Koch v. Dwyer*, No. 98 Civ. 5519(RPP), 2000 WL 1458803, at *1 (S.D.N.Y. Sept. 29, 2000)).

In this case, I agree with plaintiff that many of the allegations related to his 2012 arrest for robbery help to contextualize the claims that arise from his 2014 arrest for murder and criminal possession of a weapon, *see* Pl.'s Opp'n 11–14. As a result, I am unable to conclude that these allegations "can have no possible bearing on the subject matter of the litigation," *Ruffino*, 2009 WL 5064452, at *1 (quoting *Schramm*, 84 F.R.D. at 299). Plaintiff alleges that several of the defendants who were involved in the investigation of Simmons's murder were also direct participants in his arrest on unrelated charges in 2012. *See* SAC ¶ 117. He also states that after his arrest in 2012, one of the defendants in this case told plaintiff that he would "make sure that . . . plaintiff [is] incarcerated for the rest of his life." *Id.* ¶ 178. This factual background helps to support his claim that there was a hostile relationship between plaintiff and the officers, and that the officers had a motivation for framing him as a suspect in Simmons's murder. *See generally id.* ¶ 42–44, 117, 178; *see also* Pl.'s Opp'n 7–8.

At the same time, I do not recount here plaintiff's *specific* allegations about the police misconduct that led to his arrest in 2012, including his claims about the falsification of evidence throughout that prosecution. As I've stated previously, those allegations are largely irrelevant to the instant lawsuit, and they are the subject of a separate and still-pending action in front of Judge

7

Scanlon and Judge Johnson, *see* Feb. 8, 2019 Order 2 n.2 (granting motion to amend but noting that many of the allegations do not support plaintiff's claims). Because the allegations that support plaintiff's malicious prosecution and false arrest claims arising from his 2012 arrest are irrelevant to the claims he asserts here, however, I simply ignore them in deciding this motion. *Cf. Snyder v. Perry*, No. 14–CV–2090 (CBA)(RER), 2015 WL 1262591, at *13 (E.D.N.Y. Mar. 18, 2015) (observing that a motion to strike can be denied as moot if the court does not rely on the material the moving party seeks to strike). Though plaintiff may not use the instant lawsuit to relitigate his claims related to his 2012 arrest, he may present the background of that arrest to help support his assertion that the defendant officers had a motive to engage in misconduct in connection with his 2014 arrest. Thus, the motion to strike is denied.[4]

## DISCUSSION

### I. Malicious Prosecution

Plaintiff alleges that the defendant officers subjected him to malicious prosecution by falsifying records, coercing witnesses to name him as the shooter, and knowingly promoting unreliable sources to the prosecutors. *See* SAC ¶¶ 187–200. Because I conclude that these allegations would—if true—demonstrate that his indictment was the result of fraud and misconduct, I deny defendants' motion to dismiss plaintiff's federal and state malicious prosecution claims.

---

[4] The defendants argue that plaintiff is seeking to relitigate his claims in *Demosthene I*, the lawsuit that is currently pending before Judge Johnson and Judge Scanlon, and that he is forbidden from doing so under the doctrine of collateral estoppel. *See* Defs.' Br. 10–11. Unlike in *Dash v. City of New York*, however, a case upon which defendants rely, *see* No. 18-CV-2427 (PKC)(RER), ECF No. 16, plaintiff here does not re-assert the *claims* stemming from his 2012 arrest in the instant lawsuit. Instead, he asserts a new set of claims related to the police misconduct that he alleges led to his arrest in 2013. He may not relitigate the claims that Judge Johnson and Judge Scanlon are adjudicating, but the factual allegations from that case may be included as part of the background for the claims he is alleging here.

In order to prevail on a malicious prosecution claim, plaintiff must show that: "(1) the defendant[s] initiated a prosecution against plaintiff, (2) without probable cause to believe the proceeding [could] succeed, (3) the proceeding was begun with malice[,] and[] (4) the matter terminated in plaintiff's favor." *Rentas v. Ruffin*, 816 F.3d 214, 220 (2d Cir. 2016) (third and fourth alterations in original) (quoting *Cameron v. City of New York*, 598 F.3d 50, 63 (2d Cir. 2010)). The elements of the state-law tort of malicious prosecution are identical to the elements that give rise to liability under 42 U.S.C. § 1983. *See Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003). Here, the only dispute between the parties is whether the officers had probable cause to initiate the prosecution against plaintiff. *See* Defs.' Br. 4–9 (seeking dismissal of this claim on the ground that the defendants had probable cause to initiate the prosecution). Plaintiff was indicted by a grand jury, *see* SAC ¶ 98, and his indictment "gives rise to a presumption that probable cause exist[ed]." *McClellan v. Smith*, 439 F.3d 137, 145 (2d Cir. 2006). Such a presumption is not fatal to plaintiff's claim, however; he may rebut the presumption of probable cause by alleging that the "indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Id.* (quoting *Colon v. City of New York*, 455 N.E.2d 1248, 1251 (N.Y. 1983)); *see also Colon*, 455 N.E.2d at 1250–51 (noting that the presumption of probable cause may be overcome by evidence that the police "misrepresented or falsified evidence"). Because defendant is seeking dismissal of plaintiff's claims before the parties have engaged in discovery, plaintiff need not cite to concrete evidence to prove his claims at this stage of the litigation. Instead, allegations of misconduct will be sufficient to meet plaintiff's pleading obligations as long as they are appropriately specific and do not amount to "mere 'conjecture' and 'surmise' that his indictment was procured as a result of conduct undertaken by the defendants in bad faith." *Savino*, 331 F.3d at 73.

Importantly, plaintiff must allege misconduct that plausibly "had a material effect on [his] indictment." *Felmine v. City of New York*, No. 09-CV-3768 (CBA)(JO), 2011 WL 4543268, at *12 (E.D.N.Y. Sept. 29, 2011). Plaintiff may not simply allege that the defendant officers engaged in unrelated misconduct that did not reach the grand jury. *Id.* ("[W]here the grand jury indictment is procured without any involvement of the alleged falsehoods, those falsehoods cannot be considered a proximate cause of the resulting prosecution." (citing *Richardson v. City of New York*, No. 02 CV 3651(JG), 2006 WL 2792768, at *7 & n.4 (E.D.N.Y. Sept. 27, 2006))). Additionally, the presumption may not be "overcome by any evidence tending to show the absence of probable cause." *Colon*, 455 N.E.2d at 1251. "The burden of rebutting the presumption of probable cause requires the plaintiff to establish what occurred in the grand jury, and to further establish that those circumstances warrant a finding of misconduct sufficient to erode the 'premise that the Grand Jury acts judicially.'" *Zahrey v. City of New York*, No. 98-4546 (DCP)(JCF), 2009 WL 54495, at *9 (S.D.N.Y. Jan. 7, 2009) (quoting *Rothstein v. Carriere*, 373 F.3d 275, 284 (2d Cir. 2004)).

Plaintiff's second amended complaint is sufficient at this stage of the litigation to rebut the presumption of probable cause established by his indictment. He alleges that the defendant officers engaged in a coordinated campaign to induce Marlon Oscar, one of the witnesses to the shooting, to name plaintiff as a suspect in the murder investigation—despite the fact that Oscar initially told the defendant officers that he did not see the shooter. *See* SAC ¶¶ 55–58, 65–72. Plaintiff also alleges that Oscar edited and changed his statement to conform to the officers' preferred narrative of plaintiff's guilt, *id.* ¶¶ 65–72, and that the officers "promoted Mr. Oscar as a grand jury witness to the prosecutors despite knowing that he had already lied about the plaintiff's involvement in the shooting," *id.* ¶ 84. Because Oscar "testified in the grand jury as the main prosecution witness," *id.* ¶ 86, plaintiff plausibly alleges that his indictment was—at least in part—the result of the

officers' alleged misconduct.[5] District courts in this circuit have concluded that similar allegations are sufficient to rebut the presumption of probable cause that attaches to a prosecution as a result of an indictment. *See, e.g.*, *Ambrose v. City of New York*, 623 F. Supp. 2d 454, 474–77 (S.D.N.Y. 2009) (denying a motion for judgment on the pleadings where plaintiff alleged that the officers "coerced a lineup witness into implicating Plaintiff"); *Zahrey*, 2009 WL 54495, at *10–13 (denying motion for summary judgment where plaintiff alleged that the defendants "coerced and induced an unreliable [witness] into implicating [plaintiff]," and where there was evidence suggesting that the defendants "encouraged [the witness] to give them information specifically on [plaintiff], before [the witness independently] recounted [plaintiff's] alleged criminal behaviors"); *Blake v. Race*, 487 F. Supp. 2d 187, 210–212 (E.D.N.Y. 2007) (denying a motion for summary judgment where there was evidence that the defendants "fed facts to [a witness] and pressured him to lie," thus defeating probable cause for plaintiff's arrest and prosecution).

Many of the cases cited by the parties involved motions for summary judgment, and the courts in those cases were influenced by testimony and documentary evidence that corroborated the plaintiff's claims of police misconduct. *See, e.g.*, *Zahrey*, 2009 WL 54495, at *10 (concluding from a review of the evidence exchanged by the parties that "a reasonable jury could find that Defendants acted in bad faith in obtaining and using [the witness's] testimony"). At this stage of the litigation, however, plaintiff is not expected to demonstrate that he will be able to prove his claims of coercion and fraud. *Bouche v. City of Mount Vernon*, No. 11 Civ. 5246(SAS), 2012 WL

---

[5] Because plaintiff alleges that Oscar's statements to the grand jury were coerced by the defendant officers, this case is not like *Debrosse v. City of New York*, No. 13 Civ. 3822 (AMD) (CLP), 2017 WL 3328233, at *5–6 (E.D.N.Y. Aug. 2, 2017), where the plaintiff alleged that the statements of a witness who "did *not* testify before the grand jury" had been fabricated by the defendant officers, *id.* (emphasis added). In contrast, Oscar did testify before the grand jury, so plaintiff plausibly alleges that the grand jury relied on his statements in deciding to return a true bill of indictment, thus rebutting the presumption of probable cause.

987592 (S.D.N.Y. Mar. 23, 2012), is particularly on-point. In that case, the court denied a motion to dismiss plaintiff's malicious prosecution claim after it found that the plaintiff persuasively and plausibly alleged that three witnesses who had implicated the plaintiff as a suspect in a crime were induced by the officers to "provide[] false statements . . . about the [crime] in exchange for leniency in [their] pending [unrelated] criminal" cases. *Id.* at *1. The plaintiff in *Bouche* alleged that these witnesses all initially stated that they "could not identify the shooter," but later changed their stories in response to pressure from the defendants. *Id.* The court found that these allegations "adequately stated a claim for malicious prosecution," defeating the defendants' motion to dismiss. *Id.* at *7. In part, the court relied upon the circumstantial evidence of the witness's pending criminal cases, which made plaintiff's allegations of coercion more plausible. *Id.* at *6 ("The lengthy delays, as well as the circumstances in which the witnesses eventually identified Bouche as the shooter, raise questions as to the legitimacy of the eyewitness accounts.").

Likewise, plaintiff's account in this case is supported by some circumstantial allegations that render his claims more plausible. His claims of police misconduct are supported by the extended timeline of the investigation, *see* SAC ¶¶ 39–41, 55–58 (alleging that the officers immediately named plaintiff as a suspect but that there were no witness statements implicating him in the crime until many months later), the alleged history between the officers and plaintiff, *see id.* ¶¶ 42–43, and the fact that Oscar's statement went through multiple drafts before he eventually testified in front of the grand jury, *see id.* ¶¶ 65–73.[6] Plaintiff's allegations regarding

---

[6] Defendants rightly point out that mere inconsistencies or discrepancies between a written statement and a witness's grand jury testimony do not dissipate probable cause. *See* Defs.' Br. 7–8. Here, however, plaintiff cites to Oscar's evolving story over the course of several months, and he alleges that the story changed due to external pressure from the defendants. This is enough to state a claim for malicious prosecution, since it provides a basis for plaintiff's argument that the officers were aware that Oscar was not a reliable witness and pressured him to change his story until it fit their preferred narrative. *See, e.g.*, *Bouche*, 2012 WL 987592, at *6 (concluding that plaintiff stated a claim for false arrest and malicious prosecution because circumstantial evidence gave the officers "reasons to question the veracity of the witnesses"); *see also*

Detective Haber's earlier threat to "incarcerate[] [plaintiff] for the rest of his life," *id.* ¶ 178, also supports his claim that the "prosecution of [his] case was impelled solely by a personal animus," *McClellan v. Smith*, 439 F.3d 137, 146 (2d Cir. 2006). To be clear, these allegations do not prove plaintiff's claims. However, at this stage of the litigation, his allegations are not purely conclusory, and they are therefore sufficient to survive a motion to dismiss. *Cf. Stukes v. City of New York*, No. 13-CV-6166 (NGG)(VVP), 2015 WL 1246542, at *6 (E.D.N.Y. Mar. 17, 2015) (dismissing malicious prosecution claim where plaintiff alleged, "in a conclusory manner," that the prosecutor presented false facts provided by defendants to the grand jury).

Defendants argue that there was probable cause for plaintiff's prosecution regardless of the presumption established by the indictment. *See* Defs.' Br. 9. They argue that the defendant officers were entitled to rely upon the video of plaintiff at the scene of the shooting and the witness statements in which plaintiff was identified as the shooter. *See id.* 9. "Even without the presumption of probable cause generated by the Grand Jury indictment . . . . the relevant probable cause inquiry is always whether there is 'probable cause to believe the crimes charged were committed.'" *Jovanovic v. City of New York*, No. 04 Civ. 8437(PAC), 2010 WL 8500283, at *8 (S.D.N.Y. Sept. 28, 2010) (quoting *Rothstein*, 373 F.3d at 283). Here, however, plaintiff alleges that the witness statements were coerced and fraudulently obtained by the defendant officers. *See* SAC ¶¶ 53–54, 65–72, 75–81; *see also supra* n.3. Without these alleged fabricated witness statements, the only evidence that plaintiff was the shooter was the fact that he—along with several other individuals—appeared on a video taken from a convenience store near the scene of the shooting. This does not, on its own, allow me to conclude as a matter of law that there was probable

---

*Manganiello v. City of New York*, No. 07 Civ. 3644(HB), 2008 WL 2358922, at *6 (S.D.N.Y. June 10, 2008) (denying summary judgment on a malicious prosecution claim where an officer stated that he continued to work with a witness even after it became clear that he had lied in the past).

13

cause for plaintiff's prosecution, and therefore, plaintiff's malicious prosecution claim survives defendants' motion.[7]

## II. False Arrest

Plaintiff also alleges that he was falsely arrested by the defendant officers. *See* SAC ¶¶ 201–04. Plaintiff was arrested pursuant to an indictment warrant that was issued after he was indicted by a grand jury. *See id.* ¶¶ 98–101. "An arrest warrant under these circumstances has a presumption of probable cause which may be rebutted by establishing that the 'indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'" *United States v. Scali*, No. 16-CR-466 (NSR), 2018 WL 369195, at *7 (S.D.N.Y. Jan. 9, 2018) (quoting *Rothstein*, 373 F.3d at 282–83); *see also Williams v. City of New York*, 916 F. Supp. 2d 235, 241–42 (E.D.N.Y. 2012) (same). Because I conclude that plaintiff has stated a claim that his indictment was procured by fraud, I also deny defendants' motion to dismiss his false arrest claim.

## III. Defendant Klein's Liability

Defendants argue that Detective Klein should be dismissed from this action because plaintiff fails to plead sufficient facts to demonstrate that Klein was personally involved in the alleged misconduct. *See* Defs.' Br. 13–14. Apart from plaintiff's general allegations that the defendant officers collectively "spoon-f[ed] witnesses false information" and "coerce[d] witnesses to falsely implicate the plaintiff," SAC ¶ 53, the only factual allegations that pertain to Detective

---

[7] For similar reasons, the defendants are not entitled to qualified immunity on plaintiff's claims, because "qualified immunity does not protect those who 'knowingly violate the law,'" and "one who gives false information to a prosecutor that he knows will induce a prosecutor to commence or continue proceedings against a plaintiff[] knowingly violates the law." *Mejia v. City of New York*, 119 F. Supp. 2d 232, 272 (E.D.N.Y. 2000) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)); *cf. Bailey v. City of New York*, 79 F. Supp. 3d 424, 450 (E.D.N.Y. 2015) ("[I]t would be objectively unreasonable for [an officer] to believe he had probable cause to arrest [plaintiff] if [the officer] himself fabricated the grounds for arrest." (alterations in original) (quoting *Scotto v. Almenas*, 143 F.3d 105, 113 (2d Cir. 1998))).

Klein's conduct are plaintiff's allegations that Klein "verif[ied] and/or approve[d]" investigations and paperwork connected to plaintiff's arrest, *id.* ¶ 74; *see also id.* ¶ 46. Though an officer can be held liable for "verif[ying] an unlawful arrest," *Harris v. City of New York*, No. 15-cv-8456 (CM), 2017 WL 6501912, at *4 (S.D.N.Y. Dec. 15, 2017), plaintiff must first allege that the defendant "had knowledge" that his actions were unlawful, and thus was aware that the investigations he approved were motivated by misconduct, *Provost v. City of Newburgh*, 262 F.3d 146, 156 (2d Cir. 2001). An officer is "entitled to rely on the representations of his fellow officers" when he verifies an arrest, and he cannot be held liable if he had no reason to know that the statements supporting the arrest were fraudulent. *Alicea v. City of New York*, No. 13-cv-7073 (JGK), 2016 WL 2343862, at *6 (S.D.N.Y. May 3, 2016).

As defendants note, plaintiff does not allege that Klein knew that the paperwork he verified "contained falsehoods or fabrications." Defs.' Br. 14. This is distinct from the facts that plaintiff includes about the other officers, who are alleged to have participated *directly* in reviewing video footage, naming plaintiff as a suspect despite an absence of evidence, interviewing witnesses, and pressuring them to change their stories. Though plaintiff argues that the allegations he includes about Klein's misconduct in his previous arrest demonstrate that Klein was also involved in the fraudulent activity alleged here, *see* Pl.'s Opp'n 14–17, that history does not make up for an absence of facts demonstrating that Klein was a direct participant in the 2014 arrest and prosecution. As a result, Detective Klein is dismissed from the lawsuit.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss plaintiff's second amended complaint is denied, with the exception of the motion to dismiss Detective Klein as a defendant in this action. Because defendants concede that plaintiff's complaint states a claim for state-law

conversion and replevin, *see* Defs.' Br. 14–15, and because I retain jurisdiction over the federal malicious prosecution claim, all other claims remain. The parties must now proceed to discovery.

SO ORDERED.

Date: June 11, 2019  _____/s/_____
Brooklyn, New York  Allyne R. Ross